UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JULIO CUELLO,

                   *Plaintiff*,

    -against-

CAMERON LINDSAY, in his individual
and official capacities as Warden of
Metropolitan Detention Center;
ASSISTANT WARDEN (NAME UNKNOWN) in
his individual and official
capacities as Assistant Warden of
the Metropolitan Detention Center;
OFFICER RAMMARINE, in his individual
and official capacities as a duty of
Metropolitan Detention Center; and
ESCORT OFFICER (NAME UNKNOWN) in his
individual and official capacities,

                   *Defendants*.
----------------------------------X

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**

09-CV-4525(KAM)(MDG)

**MATSUMOTO, United States District Judge:**

       On September 28, 2009, Julio Cuello ("plaintiff")

commenced this *pro se* action against Cameron Lindsay, former

Warden of the United States Bureau of Prisons' ("BOP")

Metropolitan Detention Center Brooklyn ("MDC"), an "Assistant

Warden (Name Unknown)," Paul Ramnarine,[1] Senior Officer

Specialist, and an "Escort Officer (Name Unknown)" (collectively

"defendants"), in their official and individual capacities,

alleging constitutional violations pursuant to *Bivens v. Six*

---
[1]     Plaintiff spells this officer's name as "Rammarine," the name reflected
in the case caption, whereas defendants spell the name as "Ramnarine."  For
purposes of this motion, the court uses defendants' spelling to refer to this
officer.

*Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*").[2]  (*See* ECF

No. 1, Compl.)  Specifically, plaintiff claims that defendants'

---

[2]     In his complaint, plaintiff lists two unnamed defendants, the
"Assistant Warden" of MDC and an "Escort Officer."  Neither of the two
unnamed defendants has to date been properly named in the complaint or
personally served with process pursuant to Federal Rule of Civil Procedure 4.
Rule 4(m) provides that

> If a defendant is not served within 120 days after the complaint
> is filed, the court – on motion or on its own after notice to the
> plaintiff – must dismiss the action without prejudice against
> that defendant or order that service be made within a specified
> time. But if the plaintiff shows good cause for the failure, the
> court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Here, the summons was returned unexecuted as to the
"Assistant Warden," stating that the MDC Legal Department would not accept
service without the name of the individual to be served.  (*See* ECF No. 14,
Summos Returned Unexecuted as to "Assistant Warden" at MDC.)  No further
effort to serve the "Assistant Warden" was made.  With respect to the unnamed
"Escort Officer," no summons was ever issued for his personal service.
Because the complaint in this case was filed on September 28, 2009, the 120-
day period for service pursuant to Rule 4 has now expired.  Usually, the
court would give plaintiff notice, pursuant to Rule 4(m), of its intent to
dismiss without prejudice as to those two unnamed defendants and allow
plaintiff to show good cause for the delay.  In this case, however, dismissal
without prejudice is not appropriate because any attempt to amend the
complaint should plaintiff show good cause for the delay, or any re-filing of
the complaint as to the two unnamed defendants after dismissal without
prejudice, would be futile.  As explained below, like defendants Lindsay and
Ramnarine, any claims against these two unnamed defendants in their official
capacities would be barred by sovereign immunity.  Further, any claims
against these defendants in their individual capacities would be barred
because plaintiff failed to exhaust his administrative remedies pursuant to
the PLRA.  Therefore, the court dismisses with prejudice the claims against
the unnamed "Assistant Warden" and the unnamed "Escort Officer."

As to the named defendants, Officer Ramnarine was personally
served on December 4, 2009, well within the 120-day period prescribed by Rule
4(m).  (*See* ECF No. 8, Summons Returned Executed as to Officer Ramnarine.)
With respect to Warden Lindsay, however, service was never executed on him
personally.  Nevertheless, Federal Rule of Civil Procedure 12(h)(1)(B)
provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5)
[which include, *inter alia*, insufficient service of process] by . . . failing
to either (i) make it by motion under this rule; or (ii) include it in a
responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter
of course."  Fed. R. Civ. P. 12(h)(1)(B).  Here, the United States Attorney's
Office, as representative of both named defendants, effectively waived
service under Rule 12(h)(1)(B) by failing to assert a Rule 12(b)(4) defense
by motion or to include such defense in a responsive pleading.  Therefore,
plaintiff's service of process as to the named defendants, Warden Lindsay and
Officer Ramnarine, is unchallenged.

negligence and deliberate indifference caused him to be subjected to an assault by a fellow inmate and that defendants subsequently delayed treatment of plaintiff's injuries sustained during the assault, resulting in prolonged pain and persisting medical complications, in violation of the Eighth Amendment. (*See generally id.*)

Pending before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See* ECF No. 23, Mot. to Dismiss for Lack of Jurisdiction, and in the Alternative, for Summ. J. ("Mot.").)  For the reasons set forth below, defendants' motion to dismiss and, in the alternative, for summary judgment is granted.

**BACKGROUND**

I.  <u>**Procedural History and Complaint Allegations**</u>

Plaintiff commenced this action *pro se* on September 28, 2009, against defendants Cameron Lindsay and Paul Ramnarine. (*See* Compl.)  Liberally construed, the Complaint alleges that defendants were negligent and deliberately indifferent in failing to prevent an assault upon plaintiff by another MDC inmate and in failing to provide adequate medical care for the injuries sustained during the assault, in violation of the Eighth Amendment.  (*See id.*)

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing first that plaintiff's constitutional tort claims against defendants in their official capacities are barred by sovereign immunity; and second, that to the extent plaintiff's claims are construed as claims arising under the Federal Tort Claims Act ("FTCA"), those claims must be dismissed because plaintiff failed to exhaust his administrative remedies prior to commencing suit as required by the FTCA. (*See* ECF No. 27, Defs. Mem. of Law in Supp. of Mot. ("Defs. Mem.") at 4-7.) Next, defendant Lindsay moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that to the extent that the Complaint fails to set forth personal involvement by defendant Lindsay, plaintiff has failed to state a claim upon which relief can be granted. (*Id.* at 12-13.) Both defendants also argue that the claims must be dismissed under Rule 12(b)(6) because the defendants are protected by qualified immunity. (*Id.* at 14-16.) Finally, defendants seek summary judgment with respect to claims against them in their individual capacities pursuant to Federal Rule of Civil Procedure 56, arguing that there is no genuine factual dispute that plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act of 1996 ("PLRA"). (*Id.* at 10-12.)

Plaintiff is an inmate who was housed at the MDC from July 26, 2006 to November 5, 2008. (*See* ECF No. 26, Defs.' Stmt. Pursuant to Local Civil Rule 56.1 ("Defs. 56.1 Stmt.") ¶ 1; ECF No. 25, Decl. of Nicole McFarland ("McFarland Decl.") ¶ 1.) He is currently incarcerated at the Federal Correctional Institution in McKean, Pennsylvania, where he is serving a 216-month sentence for conspiracy to commit robberies, attempted robberies, conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, and an 84-month sentence for the use, carrying and possession of a firearm in furtherance of a crime of violence. (Defs. 56.1 Stmt. ¶ 1; McFarland Decl. ¶ 1.)

Plaintiff alleges that on July 25, 2007, an inmate assaulted him in the common area of his housing unit. (Compl. ¶ 15.) Plaintiff further asserts that upon hearing the disturbance and seeing the assault, defendant officer Ramnarine "immediately activated his body alarm," which alerted staff who responded to the scene and separated plaintiff and his attacker. (*Id.* ¶ 16.) That same day, following the attack, plaintiff complained to staff about pain from injuries sustained during the assault and "[m]omentarily after the complaint was made, he was taken to the emergency room of an outside hospital" where he was examined by hospital staff and x-rays were taken. (*Id.* ¶ 17.) Plaintiff was referred to a bone specialist to examine

"what appeared to be deep fractures to several parts of his body." (*Id.*) In or about July or August of 2007, plaintiff was taken to see a bone specialist who, after examining plaintiff, informed him that the pain he was suffering was caused by the re-fracturing of the left clavicle of his shoulder and the left wrist of his hand. (*Id.* ¶ 18.) In addition, the specialist informed plaintiff that in order to "effectively rectify" the injuries, each of the affected areas would have "to be completely rebroken [sic] to ensure that they heal properly for future effective utilization." (*Id.*) Plaintiff states that he suffers "prolonged and extreme pain up to the present day" which he alleges has "produced unnecessary complications in the treatment of his injuries." (*Id.* ¶ 30.) Moreover, plaintiff asserts that the injuries sustained in the incident have left him with limited mobility in his left wrist and collarbone, which inhibits his ability to "carry out the basic and essential necessities . . . needed to function and be productive in life." (*Id.* ¶ 31.) Finally, plaintiff alleges that his injuries have prevented him from sleeping comfortably, "producing an imbalance to his body and further pain and suffering to his upper and lower back." (*Id.*)

## II.  **Undisputed Material Facts**

Unless otherwise indicated, the undisputed material facts, set forth in the current record and defendants' Rule 56.1 Statement, are as follows.[3]

Plaintiff first filed a Request for Administrative Remedy ("BP-9") regarding the July 25, 2007 attack over six months after the incident, on February 4, 2008.  (*See* Defs. 56.1 Stmt. ¶¶ 15-16; McFarland Decl. ¶ 15.)  This BP-9 was rejected as untimely filed.  (Defs. 56.1 Stmt. ¶ 17; McFarland Decl. ¶ 15.)  On March 5, 2008, plaintiff appealed this rejection to the BOP's Northeast Regional Office, which responded that the BP-9 remedy request was untimely and instructed plaintiff to proffer a reason to the Warden for his failure to timely file the BP-9.

---

[3]     Local Civil Rule ("L. Civ. R.") 56.1 requires that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  L. Civ. R. 56.1(c).  In addition, Local Civil Rule 56.2 requires that notice be sent to a *pro se* party by the party moving for summary judgment, informing the *pro se* party of the need to submit evidence and follow the procedures in Rule 56 and Local Rule 56.1 to oppose the motion for summary judgment.  *See* L. Civ. R. 56.2.  Here, defendants complied with Local Rules 56.1 and 56.2 by serving a 56.1 statement and proper notice on *pro se* plaintiff.  (*See* ECF No. 24, Notice to Pro Se Litigant Opposing a Rule 12 Motion Supported by Matters Outside the Pleadings and Motion for Summary Judgment ("Notice of Mot."); *see also* Defs.' 56.1 Stmt.)  Plaintiff did not submit a correspondingly numbered document responding to defendants' 56.1 statement, although he did file responses to defendants' motions, nor did he file affidavits or other documentary evidence to support his opposition.  (*See* ECF No. 22, Pl. Opp'n to Mot. ("Pl. Opp'n"); ECF No. 29, Resp. in Opp'n to Defs.' Reply in Supp. of Mot. ("Pl. Resp.").)  Because plaintiff failed to respond to the motion for summary judgment with affidavits or documentary evidence contradicting the material facts asserted by the defendants, the court accepts defendants' factual assertions as true, as permitted by Local Civil Rule 56.2(d).

(Defs. 56.1 Stmt. ¶¶ 18-19; McFarland Decl. ¶ 16.) Plaintiff failed to provide a reason and instead re-filed his appeal with the Regional Office on April 14, 2008. (Defs. 56.1 Stmt. ¶ 20; McFarland Decl. ¶ 17.) The Regional Office issued the same response as it had previously, rejecting the appeal as untimely and again instructing plaintiff to provide the Warden with valid justification for failing to timely file the BP-9. (Defs. 56.1 Stmt. ¶ 21; McFarland Decl. ¶ 17.) Again, plaintiff failed to justify his untimeliness and instead, on April 15, 2008, he appealed the Regional Office's rejection to the BOP's Central Office. (Defs. 56.1 Stmt. ¶ 22; McFarland Decl. ¶ 18.) The Central Office concurred with the rejection of plaintiff's claim on the ground of untimeliness. (Defs. 56.1 Stmt. ¶ 23; McFarland Decl. ¶ 18.)

On July 17, 2009, plaintiff filed a standard form 95 ("SF-95") administrative tort claim with the Regional Office regarding the July 25, 2007 incident. (Defs. 56.1 Stmt. ¶ 24; McFarland Decl. ¶ 21.)[4] On September 28, 2009, while the administrative tort claim was still pending, plaintiff initiated the instant case in federal district court, in the Eastern District of New York, seeking injunctive relief, as well as "nominal, compensatory, and punitive damages." (Compl. at VI.)

---

[4]     Plaintiff filed a previous SF-95 on May 11, 2009, but that claim was rejected by the BOP Regional Office because it was unsigned. (McFarland Decl. ¶ 20.)

On January 13, 2010, during the pendency of the litigation, the BOP denied plaintiff's administrative tort claim.  (Defs. 56.1 Stmt. ¶ 25; McFarland Decl. ¶ 22.)

**DISCUSSION**

I.  **Legal Standards**

    A.  **Motion to Dismiss Pursuant to Rule 12(b)(1)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").  In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but is not required to draw all reasonable inferences in the plaintiff's favor.  *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Rather, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  *Makarova*, 201 F.3d at 113.  Additionally, in deciding a 12(b)(1) motion, the district court may rely on and refer to evidence outside the pleadings.  *Id.* (stating that "[i]n resolving a motion to dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings").

## B.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing plausibility on a Rule 12(b)(6) motion to dismiss, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal*, 129 S. Ct. at 1950, and afford the plaintiff every reasonable inference, *see Zinermon v. Burch*, 494 U.S. 113, 118 (1990).  However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1949-50.

The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. This does not require a showing of a "probability" of misconduct, but it does demand more than "a sheer possibility that a defendant has acted unlawfully." *See id.* Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950); *see also Twombly*, 550 U.S. at 570 (noting that where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"). Indeed, "however true," if the allegations in a complaint "could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *See Twombly*, 550 U.S. at 558.

"Material *de hors* the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004) (citing *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Here, defendants, on notice to the plaintiff, moved in the alternative for summary judgment pursuant to Rule 56 and

submitted materials outside of the pleadings in support of summary judgment. (*See* Mot.; Notice of Mot.) Therefore, where the defendants rely on materials outside the Complaint, the court will consider the motion as one for summary judgment, rather than as a 12(b)(6) motion, and evaluate the motion under the Rule 56 standard. Alternatively, where defendants rely solely on materials found within the four-corners of the Complaint, the court will consider the motion as a 12(b)(6) motion, and subject the motion to the facial plausibility standard described above.

### C. Motion for Summary Judgment Pursuant to Rule 56

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved

against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) and 56(e); *see also National Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion."). Nor can the nonmoving party rest only on the pleadings. *Celotex*, 477 U.S. at 324 ("Rule 56(e) requires the nonmoving party to go beyond the pleadings."). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence that would be admissible, as required by Rules 56(c) and 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

If the evidence is merely colorable, . . . or is not
significantly probative, . . . summary judgment may be granted."
*Id.* at 249-50 (internal citations omitted).

### D. *Pro Se* Submissions

The Supreme Court has noted that "[a] document filed
*pro se* is 'to be liberally construed,' and must be held to less
stringent standards than formal pleadings drafted by lawyers.'"
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.
Gamble*, 429 U.S. 97, 106 (1976)); *see also Bertin v. United
States*, 478 F.3d 489, 491 (2d Cir. 2007) ("[W]e liberally
construe pleadings and briefs submitted by *pro se* litigants,
reading such submissions to raise the strongest arguments they
suggest." (internal quotation marks and citations omitted)).
Because plaintiff in this case is *pro se*, the court will
construe his submissions liberally "to raise the strongest
arguments they suggest."  *Bertin*, 478 F.3d at 489.

## II.  *Bivens* Claims

### A.  Official Capacity Claims Barred by Sovereign Immunity

Plaintiff brings *Bivens* claims against both defendants
in their official and individual capacities alleging that
defendants' deliberate indifference caused him to be subject to
an assault by a fellow inmate and that he was subsequently
denied medical treatment, in violation of his constitutional
rights under the Eighth Amendment.  The claims against the

defendants in their official capacities must be dismissed on sovereign immunity grounds.  It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks and citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Moreover, sovereign immunity extends to officers of the United States when they "act in their official capacities," *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005), because such actions are "essentially a suit against the United States." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

Here, the requisite consent by statute or other means permitting *Bivens* claims to be brought against the defendants in their official capacities is absent.  Consequently, plaintiff's *Bivens* claims against defendants Lindsay and Ramnarine in their official capacities are hereby dismissed. *See, e.g.*, *Culbertson v. Cameron*, No. 08-CV-4838, 2010 WL 1269777, at *3 (E.D.N.Y. Mar. 30, 2010) (dismissing plaintiff's official capacity *Bivens* claims against prison employees and medical staff at MDC based on sovereign immunity in the absence of consent by statute or other means).

**B.    Individual Capacity Claims Barred by the PLRA**

While *Bivens* claims brought against a federal officer in his individual capacity are not barred by sovereign immunity, *Robinson*, 21 F.3d at 510, plaintiff's *Bivens* claims against the defendants in their individual capacities must be dismissed because he failed to exhaust all available administrative remedies prior to his initiation of the present federal case. Under the PLRA, an action may not be brought "with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524 (2002) (noting that exhaustion requirement under PLRA applies to federal prisoners asserting *Bivens* claims); *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007) (similar).  The Supreme Court has explained that the purpose of the PLRA is to "eliminate unwarranted federal-court interference with the administration of prisons, and . . . to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)).  The Supreme Court notes, "Once within the discretion of the district court, exhaustion in cases covered by [the PLRA] is now mandatory."  *Porter*, 534 U.S.

at 524 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

Contrary to plaintiff's argument in opposition to defendants'

motion, this exhaustion requirement applies even if the inmate

is seeking money damages, despite the fact that such damages are

not an available administrative remedy. *Booth*, 532 U.S. at 739-

40. Furthermore, just as allegations regarding safety

conditions are considered "prison conditions," and thus fall

within the gamut of claims subject to the PLRA's exhaustion

requirements, *see Porter*, 534 U.S. at 532 (explaining that "the

PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or

some other wrong"), so too are allegations regarding medical

treatment. *See Neal v. Goord*, 267 F.3d 116, 119-20 (2d Cir.

2001) (court considered prisoner's § 1983 suit containing

allegations of poor medical treatment as "ordinary garden

variety complaints about 'prison conditions'").

Even though exhaustion is mandatory, the court must

employ a three-part inquiry when an inmate plausibly seeks to

challenge defendants' contention that the prisoner has failed to

exhaust his administrative remedies as required by the PLRA.

*Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). First,

the court must ask whether administrative remedies were in fact

"available" to the prisoner. *Id.* (citing *Abney v. McGinnis*, 380

F.3d 663, 667 (2d Cir.2004)).  If not, then the exhaustion

requirement is inapplicable.  *Id.*  Second, if the exhaustion

requirement applies, the court must inquire as to whether the

defendants may have forfeited the affirmative defense by failing

to raise or preserve it, "or whether the defendants' own actions

inhibiting the inmate's exhaustion of remedies may estop one or

more of the defendants from raising the plaintiff's failure to

exhaust as a defense."  *Id.*  Finally, if administrative remedies

were available to the inmate and the defendants are not estopped

and have not forfeited the exhaustion defense, the court should

consider whether "special circumstances," such as a reasonable

misunderstanding of grievance procedures, have been plausibly

alleged to justify the prisoner's failure to exhaust his

administrative remedies.  *Id.* (citing *Giano v. Goord,* 380 F.3d

670, 675 (2d Cir. 2004)).

### 1.    BOP Administrative Grievance Procedures

Upon admission to a BOP facility, all inmates are

given an Admission and Orientation ("A&O") booklet, advising

them of the policies and procedures of both the BOP and the

individual institution.  (Defs. 56.1 Stmt. ¶ 3; McFarland Decl.

¶ 9.)  The A&O booklet describes the Administrative Remedy

process in detail and advises inmates of the proper means to

initiate and exhaust that process.  (Defs. 56.1 Stmt. ¶ 3;

McFarland Decl. ¶ 9.)  The BOP has established a three-tiered

inmate grievance program for prisoners in its custody in which federal inmates may seek formal review of complaints relating to any aspect of their confinement.  (*See* Defs. 56.1 Stmt. ¶ 2; McFarland Decl. ¶¶ 3-6 (citing 28 C.F.R. §§ 542.10-542.19).) The requirements are set forth in 28 C.F.R. §§ 542.10-542.19.

The administrative review process mandates that an inmate first report the issue informally to the prison staff, at which time the staff should attempt to resolve the issue.  *Id*. § 542.13(a).  If the inmate is dissatisfied with the staff's resolution, the inmate can then pursue the formal three-tiered administrative remedy process set forth at 28 C.F.R. §§ 542.10-542.16.

At the first of level of formal administrative review, an inmate may file a Request for Administrative Remedy (i.e., BP-9 or BP-229 form) with the Warden.  *Id.* § 542.14(a).  The requisite form must be submitted within 20 calendar days following the date on which the event forming the basis of the request occurred; this 20-day period includes the time during which the inmate must make the informal report to prison staff and await a response from staff.  *Id.*

An inmate who is not satisfied with the Warden's response may proceed to the second level of administrative review by filing with the BOP Regional Director a Regional Administrative Remedy Appeal (i.e., BP-10 form).  *Id.* § 542.15.

This form must be submitted "within 20 calendar days of the date the Warden signed the response" to the BP-9. *Id.* § 542.15(a).

Finally, if still unsatisfied, the inmate may file a Central Office Administrative Remedy Appeal (BP-11) with the General Counsel of BOP within 30 calendar days of the date the Regional Director signed the response. *Id.* § 542.15(a).

Under the three-tier system, "[i]f the inmate does not receive a response within the time allotted for a reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* § 542.18. Therefore, if time has expired at either the first or second level, the inmate may consider his request denied and in order to preserve his claim he must file an appeal at the next level, rather than file suit in the district court.

### 2. Plaintiff Failed to Exhaust Under the PLRA

Here, plaintiff failed to properly exhaust his administrative remedies prior to the commencement of the present federal suit. The undisputed facts, taken from the BOP's computerized database, SENTRY, reflect that plaintiff did not timely or properly exhaust his administrative remedies with respect to the July 25, 2007 incident. (Defs. 56.1 Stmt. ¶ 14; McFarland Decl. ¶ 14; *see also* Compl. ¶ 32.) Plaintiff filed his initial BP-9 administrative grievance relating to the alleged incident at issue in this case over six months after it

occurred, on February 4, 2008.  (Defs. 56.1 Stmt. ¶¶ 15-16;
McFarland Decl. ¶ 15.)  In so doing, plaintiff failed to file
the BP-9 within the 20-day period required by BOP regulations,
28 C.F.R. § 542.14(a).

It is true that, though untimely, plaintiff pursued
his administrative remedies at every level required by BOP
regulations.  However, the PLRA requires an inmate to "properly"
exhaust administrative remedies before filing suit.  *Woodford v.
Ngo*, 548 U.S. 81, 92 (2006) ("To . . . 'protect the integrity'
of the federal exhaustion rule, we ask not only whether a
prisoner has exhausted his state remedies, but also whether he
has *properly* exhausted those remedies . . . ." (quoting
*O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in
original))).  "Proper exhaustion demands compliance with an
agency's deadlines and other critical procedural rules . . . ."
*Id.* at 90-91.  Therefore, because plaintiff failed to file his
grievance within the time limits prescribed by BOP regulation,
he has failed to properly exhaust his administrative remedies
under the PLRA.

Plaintiff seems to concede that his BP-9 was untimely.
(*See* Compl. ¶ 32; Pl. Opp'n at 6-7.)  Nevertheless, plaintiff
argues that because he is seeking only money damages, his *Bivens*

claims are not subject to exhaustion requirements.[5]  (*See* Pl.

Opp'n at 6-7.)  Plaintiff correctly cites the law as it stood

prior to the enactment of the PLRA in 1996, and provides

pertinent case law in support of the proposition that exhaustion

of administrative remedies was not required when asserting money

damages claims under *Bivens*.  (*See id.* (citing *Muhammad v.*

*Carlson*, 739 F.2d 122 (3d Cir. 1984); *Britt v. Simi Valley*

*Unified Sch. Dist.*, 696 F.2d 644 (9th Cir. 1983)).)  Those

cases, however, have been superseded by the PLRA, which, as the

Supreme Court made clear in *Booth*, requires exhaustion of

administrative remedies regardless of the type of relief sought.

*See Booth*, 532 U.S. at 741.  In *Booth*, the court considered

whether, under the PLRA, "an inmate seeking only money damages

must complete a prison administrative process that could provide

some sort of relief on the complaint stated, but no money."  *Id.*

at 733.  The Court held "that Congress has mandated exhaustion

clearly enough, regardless of the relief offered through

administrative procedures."  *Id.* at 741; *see also Giano v.*

*Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (noting that "as long as

other forms of relief are obtainable through administrative

---

[5]     While plaintiff asserts in his opposition to defendants' motion to
dismiss that his complaint seeks only money damages (*see* Pl. Opp'n at 6-7),
in the complaint, at section VI, plaintiff seeks "preliminary and permanent
injunctions" against the various defendants and "their successors."  (Compl.
at VI.)  The Court will, however, address plaintiff's non-exhaustion argument
as if he were only seeking money damages.

channels, the provision is applicable even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings"). Therefore, plaintiff was required to exhaust his administrative remedies, despite the fact that he seeks only money damages.

Finding that plaintiff failed to timely or properly exhaust his administrative remedies does not end the inquiry. The court must employ the three-part inquiry described above to determine whether plaintiff's failure to exhaust should be excused. *Hemphill*, 380 F.3d at 686. In this case, there is no factual dispute regarding the existence and availability of the grievance procedure to plaintiff. Nor is there any allegation that defendants forfeited the defense or prevented plaintiff from pursuing his administrative remedies. The only part of the three-part inquiry relevant in this case, therefore, is whether plaintiff can demonstrate a reasonable misunderstanding of the grievance procedures to excuse his failure to timely exhaust.

To determine whether failure to exhaust is justified, a court must consider the "circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano*, 380 F.3d at 678. For example, in *Giano*, the Second Circuit held that the plaintiff's failure in that case to exhaust administrative remedies was justified where plaintiff's interpretation of

ambiguously worded New York prison regulations led him to reasonably conclude that his claim was not grievable. 380 F.3d at 678-79.

Here, plaintiff's only potential claim for "special circumstances" is his ignorance of the effect of the PLRA's exhaustion requirements and the extension thereof to all claims, regardless of the relief sought. (*See* Pl. Opp'n at 6-7.) Plaintiff's ignorance of the law, unlike in *Giano*, is not the consequence of ambiguous terms in the PLRA and the BOP administrative grievance regulations, but rather the result of plaintiff's unreasonable interpretation of those texts and pertinent case law. Plaintiff was provided an A&O booklet upon admission to MDC advising him of the policies and procedures both of the BOP and MDC specifically. (Defs. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 9.) Moreover, his reliance on pre-PLRA case law cannot justify his failure to exhaust. The Supreme Court decided *Booth*, the case definitively holding that the PLRA mandated exhaustion even when a plaintiff sought only money damages, in 2001, over six years before the alleged incident in this case. Thus, plaintiff's misunderstanding of the requirements of the PLRA in an action for money damages is not

reasonable and cannot justify his failure to timely and properly exhaust his administrative remedies.[6]

III. **FTCA Claims**

As explained above, because plaintiff is proceeding *pro se*, his Complaint must be liberally construed. *See Erickson*, 551 U.S. at 94; *Bertin*, 478 F.3d at 491. Here, his Complaint could be construed to allege tort claims against the defendants for negligence in their failure to adhere to BOP safety regulations regarding segregation of inmates and for failure to provide plaintiff with prompt and adequate medical care after the alleged attack. (*See generally* Compl.)

Defendants argue that, to the extent the court construes plaintiff's claims as tort claims against the United States, such claims must proceed under the FTCA. (Defs. Mem. at 5.) The FTCA provides the exclusive remedy for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). The government certified that defendants Lindsay and Ramnarine were acting within the scope of their employment as employees of the United States at the time the alleged

---

[6] Because the court finds that plaintiff's *Bivens* claims must be dismissed for failure to exhaust his administrative remedies pursuant to the PLRA, the court does not address whether plaintiff has failed to allege sufficient personal involvement as to defendant Lindsay or whether the defendants are protected by qualified immunity.

incident took place, and thus the United States would be substituted as the proper party in this action pursuant to 28 U.S.C. § 2679(d)(1). Defendants argue, however, that if the court construes plaintiff's official capacity claims as FTCA claims, they must be dismissed for failure to satisfy the exhaustion requirements of that statute. The court agrees.

The waiver of sovereign immunity under the FTCA is subject to the requirement that a claimant first present the claim to the appropriate federal agency:

> An action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Therefore, a plaintiff is barred from bringing a tort suit unless and until the tort claim has been finally denied in writing by the agency, or at least six months have elapsed since the filing of the claim without any agency action. *Id.* This requirement "is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

In order to exhaust FTCA administrative review, an inmate must file his claim with the appropriate BOP Regional Office and then appeal to the BOP General Counsel's Office. 28

C.F.R. §§ 543.21, 543.32. The Supreme Court and the Second Circuit have made clear that exhaustion must occur prior to the commencement of FTCA litigation in federal courts. *See McNeil v. United States* 508 U.S. 106, 113 (1993) (holding that the FTCA exhaustion requirement is jurisdictional, and thus the subsequent denial of an administrative claim cannot cure a prematurely filed FTCA action); *Celestine*, 403 F.3d at 82 ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court.").

In the present case, plaintiff filed an administrative tort claim with the BOP on July 17, 2009. (*See* Defs. 56.1 Stmt. ¶ 24; McFarland Decl. ¶ 21.) Plaintiff subsequently filed the instant Complaint in federal district court on September 28, 2009, initiating this case just over two months after he filed his administrative claim. (*See* Compl.; *See* ECF Docket.) On January 13, 2010, nearly four months after plaintiff had initiated the instant case, BOP denied plaintiff's administrative tort claim. (*See* Defs. 56.1 Stmt. ¶ 25; McFarland Decl. ¶ 22.) Therefore, plaintiff filed the instant federal Complaint subsequent to filing an administrative tort claim, but prior to fully exhausting the BOP administrative process, i.e. before determination of his claim by the BOP or before six months had elapsed from the filing of the administrative tort claim with the agency. The tort claim was

not resolved by the BOP until more than three months after the present federal case was initiated. While plaintiff ultimately exhausted his administrative remedies on January 13, 2010, when his tort claim was denied by the BOP, he did so during the pendency of the present federal litigation. Supreme Court and Second Circuit precedent make clear that the subsequent denial of an administrative claim cannot cure a prematurely filed FTCA action. *See McNeil*, 508 U.S. at 113; *Celestine*, 403 F.3d at 82. Consequently, the court dismisses plaintiff's FTCA claims without prejudice, with leave to re-file by no later than May 2, 2011 without payment of the filing fee.[7]

### CONCLUSION

For the foregoing reasons, (1) plaintiff's *Bivens* claims against the individual defendants in their official capacities are dismissed with prejudice; (2) plaintiff's *Bivens* claims against the individual defendants in their individual capacities are dismissed with prejudice; (3) plaintiff's

---

[7]     Under the FTCA "[a] tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Here, the six month period after denial of the administrative claim, which was January 13, 2010, expired on July 13, 2010. The court notes that the six month period expired while the current case was pending. Because equitable tolling is available in this Circuit, *see, e.g.*, *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182-84 (2d Cir. 2008), the court dismisses this action without prejudice. Whether equitable tolling should apply if plaintiff decides to re-file his FTCA complaint is left to the sound discretion of the court assigned to plaintiff's new action, if any, which must be filed by no later than May 2, 2011.

official and individual capacity claims against the unnamed defendants are dismissed with prejudice; and (4) plaintiff's FTCA claims are dismissed without prejudice.  Plaintiff is granted leave to re-file his complaint without payment of filing fees by no later than May 2, 2011.  The Clerk of the Court is respectfully directed to close this case.  Defendant shall serve a copy of this Memorandum & Order on plaintiff and file a Certificate of Service on the Electronic Case Filing System by no later than March 30, 2011.

**SO ORDERED.**

Dated:     March 25, 2011
           Brooklyn, NY

                                        _____/s/_____
                                        Kiyo A. Matsumoto
                                        United States District Judge